All right, second case of the morning, 14-1360, Keranos, LLC v. Silicon Storage Technology. Ms. Bright, am I pronouncing that correctly? Right, correct. Right, okay, terrific. And you reserve three minutes for rebuttal? I have. Okay. All right. Please begin whenever you're ready. We're here today under what's considered to be truly extraordinary circumstances. Essentially, Keranos' entire lawsuit was dismissed based on the finding that it didn't comply with Patent Local Rule 3-1. Even though Keranos had performed all of the following, it performed an extensive search to identify accused products. It searched the internet, the defendant's website. It performed hundreds of hours of analysis of data sheets. It reversed engineered products to try to identify accused products, and even hired experts before filing the lawsuit to help identify the accused products. Keranos provided timely infringement contention with fair notice of its infringement theories. In fact... Can I ask you, one of the problems for us, at least, in going through this case, is that the multiplicity of differently situated defendants. Yes, Your Honor. And I think everybody recognizes that there are big differences in every respect with respect to many of these defendants, including one defendant who didn't even object to the request for amended infringement contentions. Yes, Your Honor. But take the defendant SST, if you will. Why wasn't it possible for Keranos to discover from publicly available sources the accused products for SST, and leaving out all the other defendants? I understand, Your Honor. I'm not going to say that it wasn't possible. I believe that... Not even possible, but not all that hard. Keranos understood and believed that when it identified SuperFlash and the architectural whole designs to SST, that SST knew exactly which products were accused in the case. SST... But the local rules do say, and with specificity as to products where possible, in other words, to that effect. Right. It talks about you have to identify the product number if known, right? That's right, Your Honor. And that wasn't done with respect to SST. That's right. But Keranos believed that by identifying the trade name SuperFlash with the architectural designs, because Keranos did include the architectural design by number for each of the accused generations of products. But Your Honor is correct that Keranos did not identify the individual part numbers by individual numbers. So for SST, is it fair to say that Keranos' position is, although it didn't follow the letter of the local rule, it nevertheless followed the spirit of the rule? Absolutely, Your Honor. In every discussion as to what Rule 3-1 is supposed to do, what the purpose of the rule, the idea is for the parties to identify their infringement theories early in the case to crystallize those theories and to not shift them later. Keranos absolutely complied with the purpose of Rule 3-1. There's no question that SST and all of the defendants knew which products were in the case. This is an abuse of discretion standard, right? That we have to refute this order by the district court. That's right. And if you don't follow the letter of the rule, how can we say that was an abuse of discretion? Well, the ultimate result, the court needs to rule on the orders, on the existing rules. But the court also needs to look at the facts and weigh the facts. And in this case, the court didn't consider that, first of all, under the circumstances that there were no prejudice to any of the defendants, that this motion to amend occurred very early in the case. There was barely any discovery conducted at that point. The claim construction hearing was months away. There wasn't even a trial date set. So this was an enforcement of the court's, this court views it as a series of case management orders, the local rules. So this would have been a case management order. But the local rules of the Eastern District of Texas, like the local rules of a few other districts that have specific patent rules, is designed to extract from the plaintiff the infringement contentions right at the start. Now, sometimes it's harder, sometimes it's easier. But the idea is you've got to do the best you possibly can. And they define the best you possibly can to include specific product numbers. And the idea is that that sets the case on the right course. And to say that we are, as Judge Chin has just said, we're reviewing not only an abuse of discretion standard, but we're reviewing the application of a local rule by the local court. And it's kind of hard to say to the local court, you're misreading your own rule, if you are reading it by its terms to require specificity. But the local rule also has to be consistent with the federal rules of civil procedure. And it has to be consistent with the type of penalties that... is publicly accessible and it's no more burdensome for you to search it out than the defendants. Why would it be an abuse of discretion for the district court to require you to do that in your infringement conditions, rather than try to push the burden on the defendants during the discovery phase? Well, in this particular circumstance, I don't think that there was any additional burden on the defendants. I mean, are we still talking about it? The hypothetical assumes the burden is equally... You can find it just as easy as they can. Why isn't the burden on you? And again, if we're talking about... Because there's a lack of prejudice, it's why shouldn't you have to do the legwork and not them? If we're still talking about the various situated defendants in the case... Well, again, so just take my hypothetical. I understand that you have some arguments that in some instances, the information either wasn't publicly accessible or it would have required expensive reverse engineering. And therefore, you might have an argument that it would have been more burdensome or more difficult on you than the defendant. And that's a different hypothetical. Assume that you can find the information as easily as they can. Why isn't it within the district court's discretion to require you to do that, and when you didn't do that, to dismiss those claims? Well, again, I think that to dismiss the claims, the court has to look at more than whether the rule wasn't followed to the letter. I think the court needs to look at whether it's just to dismiss the claims under those circumstances. That's a very extreme penalty. And even in cases where parties are willfully in defiance of a court order, which was not the case here, the court still needs to look at what were the circumstances, whether that kind of penalty is appropriate and just under the circumstances. This argument you're making now is that, in your view, the district judge failed to consider all four of the factors for good cause to amend the contentions, right? Yes, that. And also, that if the court was considering the kind of ruling that it ultimately considered, it needed to look at the consequences and whether that was a just penalty under the circumstances, even assuming that Caroline had defied. That's part of the four factors, prejudice, importance. Absolutely. But if the court finds that you failed to comply with your obligations under the local rules to provide sufficient infringement contentions, then why isn't that a ground for dismissal? Because again, a dismissal is a very extreme penalty under every standard, certainly under the Fifth Circuit standard. Let's put it differently, the denial for your motion to amend, to restrict your contentions to the actual product numbers that you identified in your original contentions. I think if we look at it that way, that that's all the district court judge did. You filed a motion to amend, you needed to come forward with good cause, the judge concluded otherwise and then denied the motion, so you're left with what you originally had before, whatever that was, in your original contention. Well, what we had before was the identity of the products by their trade name, Superflash. But the effect of the court was to find that unless it was a product number, that it didn't comply. So if we had never brought the motion to amend, then I'm convinced, and I think that the record shows that this case would have gone all the way through trial without interruption. The parties would have done exactly what the parties did in this case. They would have litigated the case with all of the Superflash products in. All of the products were treated exactly the same. And so, I mean, you can see as far as those other factors go, prejudice. Going back to those factors, the other side cites our O2 micro-opinion that appears to be the case, then a district court need not look any further beyond that, and simply to deny the motion to amend. How is O2 micro different from your circumstance? Well, a couple things. First of all, O2 micro doesn't mandate that if the court finds a lack of diligence, that the court not look any further. It permits it, but doesn't mandate it. Just like we could also step back and permit it here and say, just as an O2 micro, this district judge did not abuse its discretion in denying your motion. But the court needs to also, the district court needs to exercise its discretion, and it continues to have its discretion and has to exercise that soundly. In this case in particular, in O2 micro, the issue was, first of all, the shifting of an entire theory after the case had already gone through discovery, after expert reports had already been prepared, completely different circumstance than here. Let me ask the same question that Judge Chen did, because I really want to make sure I understand your position on this. Assume that we could all agree that your client was not diligent, but that there was no prejudice. Is it not only the case, in your view, that the district court should have granted the motion to amend, but that the district court should be reversed by us for having relied solely on lack of diligence? Assuming that the diligence ruling was correct, yeah. Right. That the court should have, in this case, looked at... Again, if we concede that diligence was absent, is that enough to justify the judge's application of local rule? Or would we be required to reverse unless we could find prejudice? So I don't think that's... I'm sorry, I just lost my train of thought. Basically, I'm asking the same question, which is, is lack of diligence enough to justify the denial of the motion to amend? I don't think, in this case, that's so. I think that the circumstances here were very different than O2 micro, that in this case, because we were so early in the case, discovery had barely started. There was absolutely no possibility of prejudice here. This is just, as a result, it's a form over substance elevation. Could I ask you, real quickly, to turn to the standing issue? My question to you on standing is, why isn't this case a carbon copy of the Mars case? Oh, because in the Mars case, the only rights that were granted to the plaintiff were the right to enforce the right to sue for infringement. Right. But the critical language of Mars says that if you have not transferred title in an expired patent situation, then the transfer of, for example, the right to sue is not enough to give standing to the party that gets the right to sue for past infringement. So it makes, as Crown Dye does as well, it makes the transfer of title critical. And you didn't transfer title. Well, I think ownership is really what Crown was looking at. They talk about title, and here there's an explicit reservation of title in the original owner, right? Well, I don't know that there's an explicit reservation of title so much as a recital that says that the United Module owns all the rights. Retains the title. Owns all rights, title, and interests. That sounds like a retention of title. Yes, it does. Yes, it does, Your Honor. But there was a transfer of all substantial rights. Well, then why didn't they transfer title? They held back something. What were they doing, holding back title? Frankly, I think it was a tax issue. Well, then they held back something of value. But no, it's not whether they held back something of value or not, because always when there's an exclusive license and substantial rights are transferred, the patent holder is holding something. But the exclusive licensee still has standing. In here, in this case, every substantial right was transferred. But what are those? What are the substantial rights to an expired patent? When you say that you have all substantial rights to a patent that expired two years ago, what do you really have at that point? Well, you certainly have the right to sue for past and future. What future? Not future. What future? No future, Your Honor. Right. No future. You have whatever rights. And I think that- What are those rights? Well, I think the Barks case recognized there is theoretically a bundle of rights. Whatever those rights are, they were all transferred. Right. You had more time to think about this than I have. So what are those extra sticks in the bundle of rights when you have possession or all substantial rights to an expired patent? Beyond enforcing the patent, there may be rights related to prior art where the joint ownership of a patent provides certain protections as far as prior art or new inventions. At this point, Your Honor, I'm not sure of the bundle. I do know the court in Mars made the same indication. It said that title to expired a patent includes more than merely the right to recover damages for patent infringement. And the transfer of the right to sue for past damages divorced from title creates risk of unnecessary third-party litigation whether or not the title has expired. So, I mean, there are certainly rights that this court has recognized. Right now, I'm not able to account for them. But this transfer of ownership was that transfer of all substantial rights in order to give this party standing. As a matter of fact, the licensor was not in a position to do anything. It was prohibited from exercising any rights under the patent, prohibited from bringing lawsuits, from participating in lawsuits. It was all very explicit. And the agreement itself said that it was the intent of the parties to transfer absolutely every right that would give Karen a standing. Let me ask one more question if I may. We've run you over time. But it is true that the agreement prohibits the licensor, the original owner, from enforcement. But if there were a suit by the original owner against a third party, it's not clear to me where the third party would be in a position to enforce that contractual bargain between the licensor and the licensee. Therefore, I'm not sure that the contract would be a defense on the part of the third party, who wouldn't be, for example, a third party beneficiary, presumably, of that contract. What would be the basis for the defense of a third party against a suit brought by the patent title owner for past infringement? Well, I think the third party could point to the… Wouldn't it be that the licensor had given up all rights and no longer had standing to assert the patent? Exactly. But that's a contractual… I mean, do you think that this conveyance by a title owner who retains title would nonetheless then be enforceable, in effect, as a contractual matter? But courts always look at what the current ownership position was and what the contractual  agreement constitutes, and often the standing is challenged by a defendant who was not a party to the circumstances. But it's typically with an eye towards determining whether there's been a transfer of title, in other words, a property conveyance. Here, it's not clear to me that the contractual agreement constitutes a property conveyance, particularly in light of the fact that title is reserved in the licensor. That's my concern. But you're asking how could the defendant challenge the standing. Right. Right. And that happens all the time. And we look at situations whether a party is an exclusive licensee or a non-exclusive licensee, and then jurisdiction can be challenged by the defendant if the defendant wants to argue that the plaintiff is not an exclusive licensee, and the court looks at the contract and looks at what was intended between the licensor and the licensee and whether the licensee could… Okay. Thank you. Thank you. Okay. Thank you, Ms. Breyer. All right. We'll restore your three-minute rebuttal. Okay. We have a lot of questions. All right. Let's hear from the appellee, Mr. Josepher, whenever you're ready. Good morning, and may it please the Court. On standing, our point is simple. A patentee cannot transfer a hunting license, which is to say a mere right to sue a divorce from the underlying substantive right. But that's exactly what happened here because… Well, there was a transfer of more things than just the right to sue, right? I mean, if I read the contract correctly, there was a transfer of everything but bare naked title for whatever reason. Right. But they seem to be trying to transfer everything they could possibly transfer except title. Isn't that a slightly different situation from transferring only the right to sue for past infringement? Well, it's not because what's required… As a matter of standing law, what's required is that the plaintiff have suffered an injury in fact to a legally protected interest of its own. In other words, that they suffered the underlying substantive injury. And for that, if you own the patent, that's good enough. If you own the exclusionary right, that can be good enough under the substantial rights cases. But if you own neither the title to the patent nor the underlying exclusionary right, then you're in the same position as effectively a non-exclusive license. So why doesn't this agreement transfer the exclusionary rights? Because there was none left to transfer. It had expired two years earlier. So in your view, essentially, that there's no way when there's an expired patent to transfer all substantial rights but retain title. You have to transfer the title if you want to transfer it to somebody else. Yes, which is the general rule. I mean, from… I don't think Mars went that far, though. Mars clearly left the door open for a situation perhaps just like this one. Mars, the only right that had been transferred was the right to sue for past damages. Here, I think we can all agree that everything except title was transferred. Your point would be, well, that everything amounts to very little beyond the right to sue for past damages. But at the very least, there is a distinction between the facts here or the license here and the license in Mars. I recognize there's that factual distinction between the two cases. The reasons we don't think it amounts to anything is that, one, it's not at all clear what else there is of any substantial value. The patent owner or the title holder doesn't have any real right to participate in any of these litigations that the exclusive licensee gets to choose to be involved in or negotiate any settlement on that. And in addition, the Taranis, the licensee, gets to be the one in control of any reexamination or reissue of the patent. So in that sense, it's also controlling the livelihood of that patent right to the extent that the patent right can still be used to sue for past damages. But none of it bears on the right to exclude. And the all substantial rights cases hold that… Because, one, the general rule is transfer of title, right? The all substantial rights cases create an exception saying in some circumstances when exclusionary rights and other rights, all substantial rights, are transferred, that can be good enough. Those cases indicate that to transfer all substantial rights, you have to be transferring exclusionary rights. Morrow squarely holds that in Azure Networks. This court, again, recently reiterated that holding. But when there's no exclusionary right around anymore because the patent's expired, then why does that analysis matter? So I think what troubles me about where I think your argument is going is that you seem to be suggesting that there should be a different rule for expired patents versus patents that aren't expired. And that when a patent isn't expired, a patent owner can retain title but transfer everything else and the licensee will have standing. But when it's expired, the only way to give a licensee standing is to transfer title. Why would we have those inconsistent rules about when title has to be transferred or doesn't have to be transferred? I'd say there's a single rule that just applies differently in different fact contexts. The single rule is that you have to transfer, the right to sue has to be accompanied by possession of the underlying substantive right such that the plaintiff can be said to have suffered an injury in fact to its own legally protected interest. But you agree that that can be done without transferring title? If the all substantial rights case is satisfied, that's treated as being good enough. No, I don't understand that answer. So it either, you do have to transfer title or you don't have to transfer title? You have to transfer either title or, so the answer is no, or you have to transfer exclusionary rights, which is the underlying substantive right. So again, you're asking us to apply a different rule when there are no exclusionary rights left. I don't mean to quibble. I'd say that it's the same rule, the outcome is different. If there's no exclusionary rights left to transfer, you can't transfer them. Therefore, the only way you can transfer the underlying legally protected interest is through title. Why is that logically consistent? I mean, if you don't have to transfer title to allow somebody to sue for unexpired patents, why can't you transfer everything but title for expired patents? Because, as a matter of first principle. Let me ask you first, that's a legal question. I read this license agreement as transferring everything except title. Do you agree on that? It seems to be trying to. I mean, there's that vague provision in there about, and this transfers anything else that's necessary for standing. I mean, I don't understand. Get into whatever. For maybe title, that this retains anything. You couldn't identify something that's held back besides title, right? Nothing substantial. In other words, I mean, Dan, just try to brainstorm with your question earlier. We have had more time to think about this than you. Nothing significant. I mean, if you own title, then obviously you can alienate it, pledge it as collateral. There are tax consequences. There are some, in theory, I mean, if you had, if there was a related application pending then you'd get some continuation benefits. As counsel mentioned, under the older practice, if you're trying to avoid prior art, for other purposes, ownership of the patent could be helpful. Under the older interference practice, it could also have some relevance to seniority. But I agree, these are not, the things that we've thought of, one, we're not sure those, it's hard to imagine fact patterns where those things even happen. But they're not, we agree, the things we've thought of don't have. But the right to control any further administrative agency review of the merits of the patent, those were transferred in terms of being able to control the defense of the patent. Yeah, that, I mean, the duty to defend strikes me as somewhat, whether it's an obligation or a right, but I agree that was transferred. The point, though, is that it's a matter of standing law. Going back to first principles, why do we care about this? Why is the general rule of title transfer under Crown Dye, for example? The reason, as Primatech explained, is that the right to sue has to be accompanied by ownership of the underlying substantive right because that means that I have suffered an injury in fact to my own legally protected interest. That's why Crown Dye holds that I have to have either own title, in which case I stand in the shoes of the earlier owner, or I have to have had the exclusionary right at the time of the alleged infringement, not just later. I have to have it at the time of the alleged infringement because that means that I was the one that was injured by the alleged infringement. I had the relevant injury in fact at the time. If I don't have the underlying substantive right, I don't have an injury to a legally protected interest of my own, I just have a mere hunting license. And that means there are two ways. Crown Dye says the way to transfer it is title. The exception under the all-substantial rights case is, well, if you transfer exclusionary rights and everything else that's substantial, that's good enough. But the substantial rights cases hold. Morrow squarely holds. If you don't have both title and exclusionary rights, excuse me, it holds. If you don't have both right to and exclusionary rights, you don't have all-substantial rights. In Azure, again, this court held that's why a non-exclusive licensee does not have standing to sue. A non-exclusive licensee may prefer that other people not practice the patent that's mentioned as well, but has no right to exclude them from doing so. And therefore, there's no injury in fact. So are you saying that in a ball-pell type case in which there is a transfer of all substantial rights on let's say in the year 2005, that the party that has obtained the transfer of all substantial rights to a still in effect patent can sue going forward for infringement going forward, but cannot sue for infringement in the past? I'm not sure. Do we have any cases that address that issue? I think that under your precedence, I'm not sure, I think though that under your precedence you treat transfer of all substantial rights as permitting suit going back farther. Well then that seems to break the logic of your argument because you are saying that you have to have had either title or the right to sue at the time of the injury. And in that situation, the attorney would not have had either title or the right to sue at the time of the injury. Right, well that's what Crown Dye holds, but the substantial rights cases, I mean there's two ways to look at substantial rights cases. One, they're not satisfied because there's no exclusionary right. The other would be that it doesn't apply in this context. But either way, the point is that we know the substantial rights cases either don't apply or aren't satisfied here because they hold the transfer of all substantial rights entails the transfer of exclusionary rights. When they exist. Well there's no case saying that. There's no case saying we can transfer all substantial rights when an exclusionary right still exists. Well that's because you probably haven't had the case when there's an expired patent. Well Mars is, I mean, No, I mean Mars doesn't address whether all rights were transferred there. Mars, I think the factual basis for that is that the only thing that was transferred was the right to sue. And that's not at least the facts we have here. And it rejects the distinction of these other courts' cases that well this is an expired patent and therefore the right to sue becomes more important. Well it recognizes that even in an expired patent the right to sue is not all rights. It seems to me that you really are arguing for two different outcomes for expired and unexpired patents. Outcomes? But I don't see the logic in that. I mean, if for a live patent you can sue for past infringement even if you didn't get transfer title and the infringement occurred before the transfer of all substantial rights why can't when you get the transfer of all substantial rights of an expired patent sue for past infringement? The reason is this is the extreme case. Remember the first principle is prime attack and non-recognize. You can't have a hunting license means you've got to have the right to sue and the underlying substantive interest in some way. Here, wherever you might draw the lines there's no claim that they ever had any underlying substantive right to be violated because they never had title and they never had any exclusionary rights because they were gone before Paranoz even came into existence. So I understand there's some other substantial rights cases or murky in places trying to draw the line. Here we've got the extreme one. They never got near any underlying substantive right that could have given them an injury in fact to their own legally recognizable rights. Let me ask the question this way. If the transfer of ownership or the transfer of all substantial rights in the patent had occurred the day before this patent expired would this case in your view come out differently with respect to standing? It's a good question. I mean the huge difference is exclusionary right transferred. I think under your cases the answer is probably no and I understand your point. When you say it's probably no the answer would be that you could not sue or you could sue. I'm not sure. I think the answer would be that you could sue under some of those court cases but whether or not that's right the point is when we know here that's not a result in my view but here in this case we know that you have to couple the right to sue with the underlying legal interest that's being violated here there's no argument it's an extreme case, there's no argument that they ever got near that never had title, never even existed when there was an exclusionary right and as Rackman confirmed you can't retroactively transfer an assignment to a title to a patent so whatever the case might be in other cases  because they never got near the legally protected interest and therefore never suffered an injury in fact. I should probably move on sure, let's hear about that to the other issue on the other issue the answer to some questions yes the lack of diligence is dispositive because the rules require the rules especially and the courts interpret the rules require a plaintiff to exercise diligence in formulating and then if they wish to add new products later they have to they bear the burden of proving but the good cause standard has four factors I mean four factors for a reason there are two aspects of good cause first diligence is a stand alone requirement if the plaintiff did act diligently then you balance other factors to decide whether to leave to amend I read O2 micro to be talking about diligence in the context of once you become aware of information during discovery being prompt about going to the court and seeking to amend your contention and in that particular instance there was no good reason for the apparent lack of diligence in coming forward with a motion to amend after the expert testimony whereas in this instance to the extent that you want to call it diligence it's more about effort the upfront effort to and the scope of your effort in trying to figure out what product numbers were truly publicly accessible at the time so to me that feels like a different situation I agree with the fact pattern in this case in O2 micro I have some differences, no argument there but on the legal question of what good cause means under the rules first O2 micro, I mean spot on point quote good cause requires a showing of diligence is what this court held but that's not just, we're not following an O2 micro the Eastern District of Texas which construes its own rules of course has, you know, consistent with that and consistent with the fact that the good cause requirement comes from rule 16 which has also been construed similarly Eastern District of Texas cases repeatedly hold that diligence is a requirement and in fact the cases that they cite Eastern District cases that they cite trying to prove the opposite prove the point. They cite four Eastern District cases for the proposition of diligence which is supposedly not required two of them don't even address diligence but of the two that do Alex Summigan's IDT starts by saying that the courts in this district construed the rule to require diligence on the facts of that case it found there had been a mixed bag as to diligence that made a decision the other one, Global Sessions against Travis Boston what if it turns out that of the 3,500 product numbers that we're talking about maybe 300 of those product numbers were truly publicly available but then the other 3,200 were not and then it was only through discovery was the plaintiff able to learn of those product numbers and then bring them to the court's attention through an amended infringement contention. Do you think it would be appropriate to wipe out all 3,500? Well, first, obviously we don't think the facts are remotely like that but the point is in formulating their infringement contentions which then kicks off the whole rocket docket that you see down in Eastern District of Texas with lots of obligations on both sides they had to exercise diligence and they bear the burden of proving that they exercise diligence and seeking to identify the products as specifically as they could in order to then form the basis for all the... Right, and then they have a declarant I think his name is Gross who came forward and said he and their team did many, many things they looked at the defendant's website they did all kinds of product guide descriptions or whatever it is they did and in addition doing a lot of reverse engineering that took a lot of time and effort. Not a lot, what they say for the 49, and this is why, I mean the District Court subsidiary findings of fact, I mean address why there's just an overall lack of diligence here which is first, what they said is they spent hundreds of hours for 49 defendants total, hundreds of hours, not clear how many hundreds, at $30,000 which per defendant is maybe five or six hours, $700 The District Court, as fact finder in a case this complex involving so many downstream products with embedded things from others was well within its rights to conclude that wasn't even close to what the Eastern District requires in terms of real diligence. Is there any argument that this technology that they've identified that is infringing operates in a different way in different products and that in one product it may operate in an infringing way and in another product it doesn't? Or it's if you have this technology in your product, under their infringement contention it infringes? It's a little vague. First, remember the rules separately require specific disclosure of infringement theories what you're talking about. I understand, but that's not you're not answering my question. I understand. In terms, so that it doesn't go to whether they shun the burden. The other problem though, is that if you do eventually figure out, which is hard which products they think involve super flash, there have been disputes over whether some products do or don't, it's harder than you think. And there's Freescale Well, let me ask you this I'm going to assume the answer to my question is that it doesn't operate differently depending on the product, since you're not answering it, but let's hypothetically say there's a situation with a company where none of that information is public and so they can't through reasonable diligence look at product guides. They can't find the product and reverse engineer it. All they can do is they have some notion that this company may be infringing because of various factors they identify that as quickly as they can and then during discovery because the information is in your possession they ask, give us a list of which products use that technology. Why isn't that sufficient? Diligent and then when they move to amend sufficient to comply with the infringement contention rule. I think I could put together a hypothetical set of facts in which it would because they would have exercised and done their best they could and accused in good faith and gone from there the point is they haven't even come close to bearing the burden of showing that's what happened here and also though Where did the district court say everything that you just said? To me what I think I saw the district court say was that defendants were able to demonstrate that several product numbers were in fact publicly available and so that was it. So therefore the plaintiff didn't comply with the local rule. I'm going to deny the motion to amend all the way across the board. I would have said that was probably the third bit of its reasoning. I mean it held three real serious facts. First on appendix page 813 the court found that they put little effort into identifying specifically accused specifically identifying accused products that was under reconsideration which is very fair given the scope of the case they brought. Second earlier on page A7-8 and I think this is what should make it an easy case even without even for the court even without regard to the standard of appellate review. The court found that what plaintiff did was it found the efforts to identify products to be expensive and cumbersome and instead for that reason disclosed only a few products choosing to list a handful of exemplar products and then demand that defendants disclose the others. That means they Go ahead. You can finish. I have a follow up question but go ahead. I'm going to say that that means that they weren't even trying as SST demonstrates to comply with the letter of the rule. They found it would be expensive for them to bear their own burden so they would identify a few and then require the defendants to do all of the work in discovery that they were required to do under the local rules. Sorry, no I know you have a follow up. Suppose that what you've got is a case and it seems to me that some of the defendants here may well fall into this category you may quarrel with that but suppose you've got a case in which it might be possible with herculean effort to come up with a few of the product names and specific numbers but public information is not available. You'd have to go through an extensive reverse engineering of those products you were aware of whereas the defendant would have in this hypothetical case a list that it could produce by hitting a button of all products that contain the smart flag. In that situation where there's a huge disparity in the amount of effort necessary and in the public availability of the information would it not be an abuse of discretion for the court to say you didn't do enough. You imposed on the defendants the burden even though the burden might be light of producing the actual numbers. I think if the plaintiff in a given fact pattern did what it reasonably could which can be considerable. This is a high demand because of the way the docket works but if the plaintiff did what it reasonably could then I can certainly see at least a district court determining that well that was diligent. You did what you reasonably could. Well if it pulled up all the numbers that part numbers that were publicly available and other than that let's say it's just describing the by family numbers why wouldn't that be sufficient since the family numbers give ample notice to the defendants of what's being charged. Well the accused product families most of them contain some products that contain superflash and others that did not. Well suppose they say all the products in the following families that contain superflash wouldn't that be sufficient to put the defendants on notice and put the defendants in a position that all they have to do is look at their internal records and determine what products fall within which for downstream defendants is much harder than it sounds but the point is I will agree that you can hypothesize a series of facts in which the plaintiffs did everything it reasonably could and then you go into discovery. The thing is here we know they didn't. Why is this product by product stuff really even relevant at the infringement stage given that I think this applies basically if their infringement contention is if you have this technology you're infringing and if it doesn't it doesn't. So how many specific products the plaintiff or the defendant may have doesn't change the infringement analysis. What it ultimately may change is the damages analysis. Here's why it matters to infringement getting back to another question I got that I pulled myself away from too early which is it matters in the infringement analysis in a few respects. First for direct infringement it can matter because for example in the 009 patent there's a requirement about applying a program voltage depending on the product it's entirely possible that someone other than the defendant would have applied the program voltage. So in other words you get a divided infringement scenario. For indirect infringement it's especially clear because these are a lot of these you get a product that allegedly contains something that embodies the relevant technology. That can be sold as part of a broader product but someone else can sell this. In other words it gets embedded on down the road. That matters enormously to indirect infringement because from the perspective of any given defendant I need to know am I being accused of direct or indirect infringement for any given products. If it's indirect infringement for certain products okay we'll go look at those elements and by the way where did all this conduct occur? A lot of it was probably overseas so you then get into extra territorial issues and also just into different scenarios concerning patterns of proof about what happened where. Until you know what you're dealing with it does matter. It also matters because the plaintiff's had to do the defendant has to do its invalidity contentions shortly after the non-infringement contentions and the two have a bearing on each other because when you know exactly which products are alleged to be accused that does guide to some extent your prior art search. It guides to some extent your understanding of what they think the total scope of infringement is. So when you look at shortly after the infringement contentions you have to do your invalidity contentions you have to decide which claim terms you're going to pick. You get into doing a lot of expensive discovery. The whole point of the local rules is at that point you should everyone should be as focused as possible on what the accused products are. I'm sorry but the picture you're painting about trying to build non-infringement defenses that's painting a picture demonstrating how difficult it can be to know from the outset which product numbers have the patented technology. I mean it's kind of hard to expect them to come forward and identify all the product numbers and in fact I think everybody here agrees that at least some maybe most of the product numbers weren't truly publicly available. No first off there's no I mean the court said it wasn't categorically precluding you know requiring product number. It's on page 813. The point was it said that well the court does not necessarily foreclose any categorical infringement contentions. Plain disclosure of entire product families with little or no attempt to narrow the accused product descriptions is inconsistent with the rules. It is a case specific contextual good faith requirement. We agree with that. I didn't feel that contextual here in the sense that maybe for certain parties I'll just say SST for example you know maybe for that particular party there's a strong reason to say that the plaintiff could have and should have done more in complying with the actual plain language of the local rule but then there are other parties one called TSMC for example where there's no response to you from you. It's essentially conceded that there weren't any product numbers available for the plaintiff to go find to stall an infringement contention. TSMC is the point there is just that there's one specific numbering system wasn't publicly available there were other ways to publicly identify it. TSMC is a foundry makes products for others. The evidence shows and I think they ended up conceding this in a reply brief that the evidence shows that you can go online and find out who is a TSMC customer who gets the products made for them by TSMC and you can then use those product numbers. So in other words there are different ways of identifying the products apart from one specific internal set of product numbers. How would they know? To go back to the question that was asked much earlier in the argument is it fair with respect to at least some if not all of the dependents that the term superflash defines the boundaries of what we now understand to be the accused infringing devices? Superflash is a technology that's allegedly embodied in certain devices but it's not a product itself. No, I understand but if I said I accuse all products that contain superflash technology would my statement be equivalent to the statement that Kouranos would be making as to what are the what is the universe of accused products? Would it be under-inclusive or over-inclusive or would it be exactly the accused products? I think their desire is to accuse all products that include superflash. I agree with that. The other thing I was remembering that they bear the burden of proving diligence. We don't bear the burden of disproving it but from the district court standpoint if you look for example there should be no serious question that if they had been exercising even a little more effort at diligence instead of deciding it was too expensive and they'd rather push the burden on us they would have found at a minimum several hundred other specific accused products and probably a lot more SST. They admit that they knew a bunch more product numbers and just chose not to put them in. For others, if you look at for example the declaration of Brian Banner which is in the record and begins at page A17281 it marks us through how with just some very simple Google searches you can identify many hundreds of other products that are identified online as having quote superflash. This is SST products? No, others. There were several different ones. Freescale? For Freescale dozens of products that quote incorporate superflash technology were available. But outside of SST and Freescale it starts to get harder as I gather. For Epson there were dozens of product numbers saying the quote uses superflash technology. Who? Epson isn't part of this. Since that time Epson's dropped out. But that was another one where their diligence wasn't serious. What about the ones that are still remaining? Microchip, TSMC, ADM? IBM? For IBM and Intel when they did their motion to amend what they did is they used SST product numbers to identify and the point is they knew the SST product numbers up front. So IBM and Intel are in the same situation as SST. Because the numbers that they eventually chose to amend they actually had. They admit this in their red brief and footnote. They actually had just chose not to put in IBM and Intel follow SST. So is that acceptable though for IBM and Intel that they came forward with the SST product numbers? No, because again what we're talking about is the initial infringement contentions. There's a total lack of diligence to which is why none of this was in the initial infringement contentions. It's, you know, seven months later that they're seeking to amend to add stuff after a lot had already happened. And that applies for those three. For TSMC again their reply brief at 20 admits that well, you know, what they eventually, you could get not the internal TSMC product numbers but the customer's product numbers identifying the same products. You could just use that. That's reply brief 20. Apple's no longer in the case, but it was another extreme one where they purchased a teardown of one Apple iPod Nano and used that to accuse. Well, they could have done exactly the same thing with all the others. With NXP, they identified in the initial infringement contentions nothing at all. Did your red brief say anything about NXP? NXP is the one where our red brief points out that NXP filed a rule 11 motion based on the fact there were no products and then not too long thereafter they did the diligence they should have done in time to identify at least some NXP products finding out that what we have here and it's not, again we don't bear the burden of doing this defendant by defendant the point is that they haven't shown and there's lots of evidence that we have presented that does show that they haven't shown that they did a diligent search. Instead, I mean, they admitted that well, geez, you know, we thought it was getting expensive so we thought we'd shift it to the defendants. And at a minimum, the district court as finder of fact and as manager of its own case docket was certainly entitled to conclude that based on its understanding of local practice and local rules and what's been required for a long time that this wasn't close. I mean, the district court indicated it didn't think this was a close call. And whether or not that was right or wrong it certainly warrants deference. In Genentech for example, this court said that look the district court had ample reasons to permit an amendment a motion for leave to amend but it still affirmed the denial because there were ample reasons to. There was also sufficient evidence to support the other. There's further questions from the bench. I think, yeah. Thank you for all that extra time. Ms. Bright, I feel like, you know, we have to give you some additional time now in light of our extended colloquy with Mr. Joseph so why don't we say eight minutes. I won't need that much, Your Honor unless the court has more questions. There were just a couple of points. I think that this has been flushed out fairly well but there were a few points that were made on the appellee side that I just want to mention. This assertion that Keranos just decided that it was too expensive and so just was going to shift that expense to the defendant. What was very expensive and what has continued to be very expensive was to reverse engineer all of the possibilities of products that could include Superflash and also to continue to do the analysis with experts before. It wasn't that it was too expensive to look at the public information wasn't yielding the information that Keranos would have needed in order to have identified all the product numbers. I think that the court also made a statement to district court that Keranos, and this is just to quote it, made virtually no effort to specifically identify the accused product as required by the patent local rule. I think that that's just a clear abuse of discretion. It's an error on the judgment of the fact. Keranos did make some pretty significant efforts and those facts were before the court. That conclusion I think is clearly erroneous. Well, there's no doubt that the defendants came forward and were able to present product number after product number after product number. Not all the product numbers of the 3500 you wanted to amend, but many, many, many product numbers that really were publicly available. Is that correct? Actually, I think that that's not correct with regard to most of the defendants. I'm just saying there were a lot of product numbers. Well, what the defendants did though was include the product numbers for products that were listed as only having flash memory. So if you include in that I'm talking about the ones with super flash. I'm talking SST. And there were some from C-Skill. There were some. Please say yes. I'm not saying there weren't some, but you said many, many and I kind of looked at the whole group. We have to decide this case on a defendant  if we get into the weeds on this. And the weeds are pretty hard to avoid frankly from this perspective. So we have to ask you, for example, with respect to the defendant as to which you have, it seems to me, the weakest case, SST. Why couldn't you have just plucked out the product numbers from the SST catalog online? Your Honor, as we said in the brief, we believed that we were complying with the rule by identifying the name, the trade name super flash identified by name. You could have done that with all the defense. You could have had a very short infringement contention, which would be one sentence, which would say we accuse all products containing super flash technology against all defendants, period, stop, end of discussion, right? On your theory that super flash is really all you need to say. Yes, but we were more diligent than that. We wanted to include product numbers also. If there aren't any other questions from the Court, I'll submit the case. Thank you. Thank you very much. Case is submitted.